**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 05 2014, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIMOTHY E. STUCKY**
Blume, Connelly, Jordan,
Stucky & Lauer, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General

**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF G.G., MINOR CHILD, AND HER MOTHER, S.V., | ) ) ) ) ) |
| S.V., | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 02A04-1403-JT-105 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause No. 02D08-1306-JT-56

**September 5, 2014**

**BRADFORD, Judge**

## CASE SUMMARY

Appellant-Respondent S.V. ("Mother") appeals the juvenile court's termination of her parental rights to G.G. ("the Child"). Mother argues that Appellee-Petitioner the Indiana Department of Child Services ("DCS") failed to prove by clear and convincing evidence that (1) there is a reasonable probability that the conditions that resulted in the Child's removal from Mother's care will not be remedied, and that (2) termination of Mother's parental rights is in the Child's best interests. Because the undisputed findings of the juvenile court indicate that Mother has neither engaged in nor completed her court-ordered domestic violence counseling programs, we conclude that sufficient evidence supports the juvenile court's determination that there is a reasonable probability that the recurring episodes of domestic violence, for which the Child was removed from Mother's care, will not be remedied. Additionally, because the Court Appointed Special Advocate ("CASA") for the Child testified that the Child needs a safe, stable, and permanent home, which Mother has been unable to provide, we conclude that sufficient evidence supports the juvenile court's determination that termination of Mother's parental rights is in the Child's best interests. We affirm.

## FACTS AND PROCEDURAL HISTORY

The Child was born on November 12, 2005, to Mother and R.G. ("Father").[1] Prior to

---

[1] Father's parental rights to the Child were also terminated by the juvenile court but are not at issue in

October 2, 2012, the Child resided with Mother and Mother's boyfriend, C.S. ("Boyfriend").[2] On March 28, 2012, DCS filed a petition alleging that the Child was a Child in Need of Services ("CHINS"). Specifically, DCS alleged that Mother and Boyfriend had a history of domestic violence and had engaged in acts of domestic violence while the Child was present in the home. DCS further alleged that Boyfriend had been convicted of domestic battery for which he was then-serving his sentence on home detention.

At a hearing on March 29, 2012, Mother admitted to the allegations set forth in the CHINS petition, and the juvenile court adjudicated the Child to be a CHINS. The juvenile court issued its dispositional decree that same day, ordering the Child to remain in Mother's care and establishing a parental participation plan for Mother. Mother's parental participation plan required her, *inter alia*, to enroll in both family and individual counseling on domestic violence, attend all sessions, and successfully complete the programs. Mother was also required to refrain from any and all domestic violence.

At a review hearing on August 16, 2012, the juvenile court found that Mother had enrolled and was participating in the counseling programs required by her parental participation plan. The juvenile court further found that Mother had demonstrated an ability to benefit from those services. The juvenile court continued the Child's placement with Mother, finding that the Child was progressing well.

In early October 2012, DCS received a report that Mother and Boyfriend had engaged

---

this appeal.

[2] Mother has two other children, born to Boyfriend, who were subject to the underlying CHINS proceedings. Mother's parental rights to these other children are not at issue in this appeal.

in a new episode of domestic violence. As a result, on October 2, 2012, the Child was removed from Mother's care and placed with her paternal grandparents. At a hearing on October 9, 2012, the juvenile court found that a new episode of domestic violence had indeed occurred between Mother and Boyfriend. The juvenile court ordered the Child to remain in the care of her paternal grandparents.

On February 5, 2013, the juvenile court held a permanency hearing and found that Mother had failed to satisfactorily participate in the counseling programs required by her parental participation plan and that she no longer demonstrated an ability to benefit from those services. The court maintained its permanency plan for the Child of reunification with Mother but ordered a concurrent plan for paternal grandparents to establish custody.

On May 1, 2013, the juvenile court held another permanency hearing and again found that Mother had failed to satisfactorily participate in the counseling programs required by her parental participation plan and that she had not demonstrated an ability to benefit from those services. As a result the juvenile court modified the permanency plan to termination of Mother's parental rights and adoption for the Child.

On June 24, 2013, DCS filed its petition to terminate Mother's parental rights. On November 6, 2013, the juvenile court ordered Mother and paternal grandparents to undergo mediation concerning the Child's care. A two-hour mediation conducted on November 12, 2012, proved unsuccessful. On November 19 and 20, 2013, the juvenile court held an evidentiary hearing on DCS's termination petition, during which the court heard testimony from, *inter alia*, Mother's domestic violence counselors, Patricia Stonestreet and Maralee

4

Martin; the Child's case worker, Amanda Ray; and CASA Suzanna Lange. On February 14, 2014, the juvenile court issued its order terminating Mother's parental rights to the Child. Where necessary, additional facts will be provided below.

## DISCUSSION AND DECISION

The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise her children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id.* However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the child's interests in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id.*

The purpose of terminating parental rights is not to punish the parent but to protect the child. *Id.* Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

(A) one (1) of the following exists:

5

(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

(iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2011).

Mother challenges the sufficiency of the evidence to support the juvenile court's termination of her parental rights. Specifically, Mother argues that DCS failed to prove by clear and convincing evidence that (1) there is a reasonable probability that the conditions that resulted in the Child's removal from Mother's care will not be remedied, and that (2) termination of Mother's parental rights is in the Child's best interests. In reviewing termination proceedings, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the

6

evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id*.

Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id*. First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id*. In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id*. A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id*.

## I. Whether There Was a Reasonable Probability that the Conditions Resulting in the Removal of the Child Would Not Be Remedied

Mother argues that DCS failed to prove by clear and convincing evidence that there was a reasonable probability that the conditions resulting in the Child's removal would not be remedied. In determining whether the conditions that resulted in a child's removal will not be remedied, we engage in a two-step analysis. *K.T.K. v. Ind. Dep't of Child Servs., Dearborn Cnty. Office*, 989 N.E.2d 1225, 1231 (Ind. 2013).

> First, we identify the conditions that led to removal; and second, we "determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quoting [*In re*] *I.A.*, 934 N.E.2d [1127,] 1134 [(Ind. 2010)] (internal quotation marks omitted). In the second step, the trial court must judge a parent's fitness "as of the time of the termination proceeding, taking into consideration evidence of changed conditions," [*Bester*, 839 N.E.2d at 152]—balancing a parent's recent improvements against "habitual

pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation." *K.T.K.*, 989 N.E.2d at 1231 (quoting *Bester*, 839 N.E.2d at 152) (internal quotation marks omitted). We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. *See K.T.K.*, [989 N.E.2d] at 1234. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014) (footnote omitted).

The record reveals that DCS removed the Child from Mother's care due to recurring episodes of domestic violence between Mother and Boyfriend. The juvenile court determined there to be a reasonable probability that the recurrence of these episodes would not be remedied because "Mother ha[d] not been meaningfully engaged in her therapy" and "ha[d] not completed services designed to correct the issue of domestic violence." Appellant's App. p. 72. In support of this determination, the trial court found as follows:

15. In August, 2012, the Department referred the Mother for counseling services at Family and Children's Services. From the testimony of therapist Joel Harris the Court finds that he met with the Mother and [Boyfriend] on about September 2012. However, in February 2013, [Boyfriend] expressed an interest to pursue a life path separate from Respondent Mother.[3] As a result, the Mother was referred to therapist Rebecca Stonestreet for individual therapy. Therapist Harris testified and the Court finds that the Mother and [Boyfriend] did not make sufficient progress in family therapy to achieve their goals. From therapist Stonestreet's testimony the Court finds that therapy was provided to the [M]other from February 25, 2013 until October, 2013. Only seven sessions were held owning to the [M]other's lapse in attendance between May and August 2013. As a result, her progress suffered. The therapist reported that the Mother was in denial as to her issues and was not engaged. The Mother did not meet the therapeutic goals.

---

[3] In April of 2013, Boyfriend terminated his relationship with Mother and ordered her out of his home. Mother vacated Boyfriend's home the following month.

8

16.    The Mother was referred to the Center for Nonviolence in August, 2012. She was enrolled in a special program designed for mothers with children who have been exposed to violence in the home. From the testimony of Maralee Martin of the Center, the Court finds that the Mother attended 21 of 26 session[s]. She was expelled from the program because she was not engaged in the group discussions and was not demonstrating an ability to benefit from the therapy. The Mother made comments during the group sessions that demonstrated a lack of attention to the discussion. She did not successfully complete the program.

Appellant's App. p. 71.

Mother does not challenge the above-stated findings of the juvenile court. Rather, she claims the findings do not support the juvenile court's conclusion that there was a reasonable probability that the conditions resulting in the Child's removal would not be remedied. We disagree. As the juvenile court accurately summarized, "Three separate therapists testified that the Mother did not meet her therapeutic goals," and "Two confirmed that the Mother was not engaged" in her counseling programs. Appellant's App. p. 72. "[S]imply going through the motions of receiving services alone is not sufficient if the services do not result in the needed change…." *In re J.S.*, 906 N.E.2d 226, 234 (Ind. Ct. App. 2009). Moreover, "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, will support a finding that there exists no reasonable probability that the conditions will change." *In re A.H.*, 832 N.E.2d 563, 570 (Ind. Ct. App. 2005).

## II. Whether Termination Is in the Best Interests of the Child

Mother also argues that DCS failed to prove by clear and convincing evidence that

termination is in the Child's best interests. In determining what is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In doing so, the juvenile court must subordinate the interests of the parent to those of the child involved. *Id*. Furthermore, this court has previously determined that the testimony of a child's case worker, Guardian Ad Litem, or CASA regarding the child's need for permanency supports a finding that termination is in the child's best interests. *Id*.; *see also In re M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

In determining that termination of Mother's parental rights was in the Child's best interests, the juvenile court found as follows:

> In this case [CASA Lange] has concluded that termination of parental rights is in the child's best interests. The child loves her grandparents and they have provided her with a stable, safe, and nurturing environment. The child is doing well in their care. In contrast, the Mother and Father have not made a commitment to the provision of services that demonstrate[s] a level of sacrificial care that a child needs. … The Mother has only recently secured a home; having lived in two separate hotels for most of the summer and fall, 2013. She has not completed therapeutic services primarily because she has not been engaged in the sessions. When called upon in group therapy she acknowledged that she was not paying attention. She has not met her obligations to her other children. Through the termination of parental rights, the child is freed to be adopted by relatives who have demonstrated the willingness and ability to make the necessary sacrifices and commitment to provide the child with a safe, stable, and permanent home.

Appellant's App. pp. 72-73.

Mother does not challenge the above-stated findings of the juvenile court. Rather, she claims that terminating her parental rights would unnecessarily sever the close bond and

10

loving relationship she and the Child share. Mother likens her case to *In re R.H.*, 892 N.E.2d 144 (Ind. Ct. App. 2008), where a divided panel of this court reversed a juvenile court's order terminating a father's parental rights, concluding that "no relationship need be severed and no permanent and irreversible decision need be made to protect [the child's] best interests." *Id.* at 151. The father in *In re R.H.* resided in Alaska and had no relationship with his child, and the child was strongly bonded with his grandparents, with whom he had been placed. The father, however, "did everything that was asked of him," including completing and benefiting from all court-ordered services. *Id.* at 150.

Here, the juvenile court's undisputed findings reveal that Mother has neither engaged in nor completed her court-ordered domestic violence counseling programs. In light of CASA Lange's testimony regarding the Child's need for permanency, considered with the reasonable probability that Mother's recurring episodes of domestic violence will not be remedied, we conclude that DCS presented sufficient evidence to prove that termination of Mother's parental rights is in the Child's best interests.

## CONCLUSION

Having concluded that the evidence is sufficient to support the juvenile court's termination of Mother's parental rights to the Child, we affirm the judgment of the juvenile court.

The judgment of the juvenile court is affirmed.

BARNES, J., and BROWN, J., concur.